UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRENT LYONS                                           CIVIL ACTION

VERSUS                                                  NO. 17-4621

DARREL VANNOY                                      SECTION: "A"(3)

<u>REPORT AND RECOMMENDATION</u>

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Trent Lyons, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On October 26, 2012, he was convicted of second degree murder under Louisiana law.[1] On January 14, 2013, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2] On January 31, 2014, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[3] The Louisiana Supreme Court then

---

[1] State Rec., Vol. 7 of 8, transcript of October 26, 2012, pp. 71-72; State Rec., Vol. 1 of 6, minute entry dated October 26, 2012; State Rec., Vol. 1 of 8, jury verdict form.
[2] State Rec., Vol. 7 of 8, transcript of January 14, 2013; State Rec., Vol. 1 of 8, minute entry dated January 14, 2013.
[3] <u>State v. Lyons</u>, 134 So. 3d 36 (La. App. 5th Cir. 2014); State Rec., Vol. 1 of 8.

denied his related writ application on November 7, 2014,[4] and his motion for reconsideration on January 16, 2015.[5]

On or about March 16, 2015, petitioner filed an application for post-conviction relief with the state district court.[6] That application was denied on August 24, 2015.[7] His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on November 3, 2015,[8] and by the Louisiana Supreme Court on September 23, 2016.[9]

On May 22, 2017, petitioner filed the instant federal application seeking habeas corpus relief.[10] The state thereafter filed a response conceding that the application was timely but arguing that petitioner's claims do not warrant relief.[11]

---

[4] State ex rel. Lyons v. State, 152 So. 3d 170 (La. 2014); State Rec., Vol. 2 of 8.

[5] State ex rel. Lyons v. State, 157 So. 3d 1117 (La. 2015); State Rec., Vol. 2 of 8.

[6] State Rec., Vol. 2 of 8.

[7] State Rec., Vol. 2 of 8, Order dated August 24, 2015.

[8] State v. Lyons, No. 15-KH-637 (La. App. 5th Cir. Nov. 3, 2015); State Rec., Vol. 3 of 8.

[9] State v. Lyons, 199 So. 3d 1140 (La. 2016); State Rec., Vol. 8 of 8.

[10] Rec. Doc. 4. Petitioner subsequently supplemented his accompanying memorandum in support of his application. Rec. Doc. 21.

[11] Rec. Doc. 15. Out of an abundance of caution, the undersigned notes that the state argues in its response that several of petitioner's claims were dismissed pursuant to Louisiana Code of Criminal Procedure article 926(B)(3), which provides: "The petition [for post-conviction relief] shall allege … [a] statement of the grounds upon which relief is sought, specifying with reasonable particularity the factual basis for such relief …." The state further opines that article 926(B)(3) concerns a matter of state procedural law and, therefore, a claim denied based on a petitioner's noncompliance with that article is procedurally barred on federal review. See Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) ("A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. … This rule applies to state court judgments on both substantive and procedural grounds.). However, the undersigned has found no decision from the United States Fifth Circuit Court of Appeals or from any section of the Eastern District addressing whether article 926(B)(3) qualifies as a state procedural rule adequate to bar federal review of a claim. Further, even if this Court were to assume that the state's argument is correct, it is not at all clear that the last state court to consider the claims, i.e. the Louisiana Supreme Court, found the relevant claims barred based on article 926(B)(3). On the contrary, the Louisiana Supreme Court did not cite that article in denying relief, but instead gave other reasons for its decision and/or cited other provisions of state law. In any event, a federal habeas court need not determine whether claims are in fact procedurally barred when, as here, the claims clearly fail on the merits. See Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n.5 (E.D. La. July 30, 2008). Accordingly, the undersigned recommends that the Court simply pretermit a decision on whether the claims at issue were in fact procedurally barred and instead deny those claims on the merits for the following reasons.

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell,

535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this

case as follows:

> On October 18, 2011, Wilbert Decou and defendant engaged in an altercation stemming from an incident between defendant and Desmond Parker, the son of Decou's girlfriend, which had occurred on the previous evening.
>
> On the date of the incident, defendant approached Decou and asked him if he wanted to fight.  Defendant then went back in the direction from which he came.  Decou went inside his house, and then returned wearing gloves and appeared prepared for a fight.  Decou had cut the fingers off of his gloves.  Decou was also wearing a shirt.
>
> Defendant returned, told Decou to come on and fight and stated that he fights for a living.  Decou put his arms up in a defensive position, and then, Decou and defendant began throwing fists at each other.  The fight was witnessed by two men, Warren Mosley and Otis Gary, and also by Desmond Parker.  According to Gary, not less than four or five punches passed between defendant and Decou.
>
> During the three minute fight, Decou caused defendant to move backwards.  Once defendant realized that Decou was really fighting back and was unafraid, defendant pulled out a military knife with a seven to eight inch blade.  When defendant pulled the knife, Decou ran towards the street.  After it appeared that defendant was gaining ground, Decou turned around.  Decou raised his hands in an unsuccessful attempt to block the knife or in an attempt to swing at defendant.  As soon as defendant caught up with Decou, he jammed Decou under his arm with a knife, and Decou dropped down to his knees in the street.  According to Gary, defendant said, "I told you I was an 'f-ing' killer, now look you see," while standing over Decou.  According to Mosley, after the defendant stabbed Decou, he stated that this is what he did for a living.
>
> Parker testified that he thought Decou was knocked out and had only lost the fight.  After he walked towards Decou to help him up, he saw a pool of blood coming from Decou's side.  Parker removed his own shirt and used it to put pressure on Decou's wound to stop the bleeding.  As Parker and a nurse from across the street performed CPR and attempted to revive Decou, Parker saw defendant running away.  Defendant later returned to the scene, but then again left.
>
> Thomas Evans, a forensic death investigator for the JPSO and a paramedic, was one of the responders to the scene.  At trial, he testified that his responsibilities were to identify the body, notify the family, and locate and document any wounds, property, clothing, and evidence to relay to the pathologist.  He noticed a penetrating wound to the deceased's right chest.  After searching the deceased's clothing and body, he found a pocket knife and metal wrapped in electrical tape in the deceased's right front pocket.  The pocket knife was folded, closed, void of blood and was returned to the deceased's family.  Also, Evans removed cloth

gloves, which were not weighted, from the deceased's hands. In addition, the deceased was shirtless, and a shirt was found underneath the body.

The defense disputed Mr. Mosley and Mr. Gary's version of events. Randon Brown testified at trial on behalf of the defense that Decou had been like a second father to him for 10 years, and he would see him every day. According to Brown, after the dispute between defendant, and Parker and his mother had been resolved, Decou said that he and defendant were going to fight every day and that he would "f* * * that n* * * * * up." Then, Decou prepared to fight by putting on gloves, removing his shirt and switching his slippers for tennis shoes.

After defendant pulled up in his driveway and exited his car, defendant and Decou began fighting in the middle of the street. Brown testified that he witnessed Decou pull the knife out of his back pocket, and that he, Brown, knew it was a knife because he saw the glare. When Decou pulled out the knife, defendant grabbed his arm and wrestled with him. Then, Decou was on the ground, and defendant walked away moving toward him. Brown testified that as defendant walked towards him, he saw that defendant did not have anything in his hand. He also saw that defendant had cuts on his arm and his eye was bleeding. Brown testified that he was telling the truth and was not testifying because he did not like Decou. Brown stated that he did not want to come forward at first because he was stuck in the middle and Decou was his family and a friend. He explained that he was testifying under subpoena and if he had a choice he would not have come.

The day after the incident, defendant accompanied by his sisters and girlfriend, met with an attorney located at Tulane Avenue and Broad Street. Defendant's girlfriend, Cindy Armstead, testified that defendant's arms were cut and swollen, and his face was swollen. She stated that the defendant did not have those marks before the fight. In her opinion, the wounds appeared to be stab wounds and appeared to be fresh, although she also admitted that there was scabbing. She further stated that defendant kept repeating that Decou had wanted to fight. After pictures of defendant were taken at the law office, he voluntarily turned himself into at the Jefferson Parish jailhouse and was booked with second degree murder.

Autopsy results revealed that Decou died as a result of a single stab wound to the chest which resulted in lethal injury to his heart and pulmonary artery. The wound was consistent with a single-edged blade like a kitchen knife, and it was unable to be determined whether or not the blade was serrated. The stab wound was more than two inches in length and six inches in depth.[12]

---

[12] State v. Lyons, 134 So. 3d 36, 37-39 (La. App. 5th Cir. 2014); State Rec., Vol. 1 of 8.

### III.  Petitioner's Claims[13]

### A.  Prosecutorial Misconduct/Brady

Petitioner claims that the prosecutor engaged in misconduct by failing to disclose material favorable evidence to the defense in violation of Brady v. Maryland, 373 U.S. 83 (1963).  In the state post-conviction proceedings, the district court denied that claim, holding:

> Petitioner claims that the State failed to disclose evidence that witness Gary sought inducements for his testimony at trial.  However, petitioner fails to provide any evidence in support of this claim.  Petitioner fails to state with any particularity the factual basis for relief.  LSA-C.Cr.P. art. 926(3).  On the showing made, this claim will be denied.[14]

Petitioner thereafter sought review by the Louisiana Fifth Circuit Court of Appeal.  That court likewise denied relief, holding:

> [R]elator alleged that the State failed to disclose evidence that the witness, Otis Gary, sought inducements in exchange for his trial testimony against relator.  Again, the district court, citing La. C.Cr.P. art. 926(B)(3), found that "petitioner fails to provide any evidence in support of this claim.  Petitioner fails to state with any particularity the factual basis for relief."
>
> In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Id., 373 U.S. at 87, 83 S.Ct. at 1196-97.  The State's constitutional duty to disclose favorable evidence is not breached unless the omission is sufficiently significant to result in the denial of the defendant's right to a fair trial.  State v. Jacobs, 99-991 (La. 5/15/01), 803 So.2d 933, 948, cert. denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002).
>
> Even though the State does not possess or have knowledge of evidence, it is not necessarily absolved of its responsibilities under Brady because the prosecutor has a duty to learn of any favorable evidence known to the police and others acting on the government's behalf in the case.  State v. Louviere, 00-2085 (La. 9/4/02), 833 So.2d 885, 896, cert. denied, 540 U.S. 828, 124 S.Ct. 56, 157 L.Ed.2d 52 (2003).  The State is not obligated, however, to furnish a defendant with

---

[13] For ease of analysis, the claims are discussed in a different order than they are presented in the federal application.
[14] State Rec., Vol. 2 of 8, Order dated August 24, 2015, p. 3.

information he already has or can obtain with reasonable diligence.  <u>Louviere</u>, 00-2085 at 14, 833 So.2d at 897.

There is no <u>Brady</u> violation where a defendant had knowledge of the essential facts permitting him to take advantage of any exculpatory information or when the evidence is available to defendant, and therefore, the information cannot be found to have been suppressed by the State.  Rather, the court indicated that <u>Brady</u> proscribes when there is a withholding of favorable and material evidence from the defense.  <u>State v. Hobley</u>, 98-2460, p. 25 (La. 12/15/99), 752 So.2d 771, 786 n.10, <u>cert. denied</u>, 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 61 (2000).

Our review of this writ application reveals that relator's allegation of a <u>Brady</u> violation is vague and conclusory.  First, in the instant matter, relator does not specifically allege which, if any, information was not known to him or his trial counsel prior to trial.  Further, as to his specific claim that Mr. Gary sought an inducement in exchange for his trial testimony, relator has failed to provide any evidence of inducements sought or given in exchange for testimony.  We find no error in the district court's ruling ….[15]

The Louisiana Supreme Court then likewise denied relief, holding:  "Relator … fails to show the state withheld evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)."[16]

The AEDPA places severe limitations on this Court's review of the state court's decision rejecting petitioner's <u>Brady</u> claim.  The United States Fifth Circuit Court of Appeals has explained:

Under AEDPA, [a federal court] do[es] not decide *de novo* whether a state prisoner has sufficiently proven a <u>Brady</u> violation.  <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter."); <u>Neal v. Puckett</u>, 286 F.3d 230, 236 (5th Cir. 2002) (*en banc*) ("We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect.").  Rather, [a federal court] decide[s] whether the state court's <u>Brady</u> determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law.  <u>Busby v. Dretke</u>, 359 F.3d 708, 717 (5th Cir. 2004).

<u>Dickson v. Quarterman</u>, 462 F.3d 470, 477-78 (5th Cir. 2006).

---

[15] <u>State v. Lyons</u>, No. 15-KH-637, at pp. 7-8 (La. App. 5th Cir. Nov. 3, 2015); State Rec., Vol. 3 of 8.
[16] <u>State v. Lyons</u>, 199 So. 3d 1140 (La. 2016); State Rec., Vol. 8 of 8.

As noted, in the last reasoned state court opinion addressing petitioner's claim, the Louisiana Supreme Court correctly identified Brady as the clearly established federal law governing petitioner's claim. Because the state court correctly identified controlling precedent and because petitioner has not pointed to (and the undersigned's research has not found) a United States Supreme Court case with materially indistinguishable facts reaching a contrary result, this Court need only determine whether the state court's application of Brady was "unreasonable." For the following reasons, it was not.

The United States Supreme Court has held:

> A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused. This Court has held that the Brady duty extends to impeachment evidence as well as exculpatory evidence, and Brady suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor.

Youngblood v. West Virginia, 547 U.S. 867, 869-70 (2006) (internal citations and quotation marks omitted). Therefore, to prevail on a Brady claim, a petitioner "must show that (1) the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is material to guilt or punishment." DiLosa v. Cain, 279 F.3d 259, 262-63 (5th Cir. 2002).

Petitioner argues that the state suppressed impeachment evidence, i.e. information that Otis Gary sought the state's assistance in resolving an outstanding criminal matter in exchange for his testimony at petitioner's trial. However, the record conclusively disproves that claim. This issue was explored in great detail at the time Gary testified at trial. At the commencement of his testimony, Gary testified that he had an outstanding traffic attachment but understood that he would receive no assistance from the state on that matter in exchange for his testimony.[17] On

---

[17] State Rec., Vol. 5 of 8, transcript of October 24, 2012, pp. 263-64.

cross-examination, he then denied that he had asked the state for assistance with respect to the attachment. However, at that point in Gary's testimony, the prosecutor stated that Gary had in fact requested assistance, although such assistance was denied. The prosecutor further noted that he had previously provided that same information in a letter to defense counsel, although defense counsel denied reading the letter.[18] The parties eventually entered into the following stipulation concerning the matter in the presence of the jury:

> MR. SCHLEGEL [the prosecutor]:
> Your Honor, the State will offer the following stipulation. An attachment was issued by a judge in Second Parish Court, Parish of Jefferson, on March 14th, 2012, under Case Number S836062, for the arrest of Otis Gary.
> Does the defense accept?
>
> MR. REGAN [defense counsel]:
> Yes.
>
> MR. SCHLEGEL:
> Otis Gary requested assistance from Mr. Scott Schlegel regarding the above attachment, but that request was denied by Mr. Schlegel. Mr. Gary was specifically told that he would receive nothing in exchange for his testimony. Does the defense accept that stipulation?
>
> MR. REGAN:
> I accept that stipulation.[19]

Because it is clear that the information at issue, i.e. that Gary unsuccessfully sought the state's assistance with respect to his own criminal matters in exchange for his testimony in petitioner's case, was relayed to the defense prior to or, *at the very latest*, at trial, there is no basis for concluding that the state court decision denying petitioner's <u>Brady</u> claim constituted an unreasonable application of clearly established federal law as determined by the Supreme Court

---

[18] Id. at pp. 283-317.
[19] State Rec., Vol. 6 of 8, transcript October 25, 2012, pp. 14-15.

of the United States.  On the contrary, "[t]he Supreme Court has *never* expressly held that evidence that is turned over to the defense *during trial* has been 'suppressed' within the meaning of Brady." Powell v. Quarterman, 536 F.3d 325, 335 (5th Cir. 2008) (emphasis added).[20]

In that petitioner has failed to demonstrate that the state court's decision denying his Brady claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), this Court should defer to the state court's decision and likewise deny the claim.

## B.  Right to Present a Defense/Right to Cross-Examination

Petitioner next claims that the trial court denied him his right to present his defense by unduly hampering his ability to cross-examine Desmond Parker.  In the state post-conviction proceedings, petitioner presented this as two separate but related claims.  The district court denied relief, first addressing the purported denial of petitioner's right to present a defense and holding:

> Petitioner fails to state with any particularity the factual basis for relief. LSA-C.Cr.P. art. 926(3).  As the State points out in its response, petitioner

---

[20] In Powell, the Fifth Circuit went on to note:

> Our court has held that such evidence is not considered to have been suppressed.  See United States v. Williams, 132 F.3d 1055, 1060 (5th Cir. 1998); see also Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994); United States v. McKinney, 758 F.2d 1036, 1049-50 (5th Cir. 1985).  In this Circuit, when the claim is untimely disclosure of Brady material, we have looked "to whether [the defendant] was prejudiced by the tardy disclosure."  Williams, 132 F.3d at 1060.  We have held that a defendant is not prejudiced if the evidence is received in time for its effective use at trial.  United States v. Walters, 351 F.3d 159, 169 (5th Cir. 2003) (collecting cases).

Powell, 536 F.3d at 335.  Accord United States v. Williams, 132 F.3d 1055, 1060 (5th Cir. 1998) ("To establish a Brady violation, the defendant must show that the prosecution suppressed material evidence favorable to the accused. Because the government produced the allegedly inconsistent statement during the trial, the evidence was not suppressed." (citation omitted)); United States v. Higgs, 713 F.2d 39, 44 (3rd Cir. 1983) ("The Brady material in this case was information that appellees could use on cross-examination to challenge the credibility of government witnesses. For that type of material, we think appellees' right to a fair trial will be fully protected if disclosure is made the day that the witness testifies.  Disclosure at that time will fully allow appellees to effectively use that information to challenge the veracity of the government's witnesses. … Thus we hold that, assuming the requested information is Brady material, appellees' due process rights to a fair trial would be satisfied in this case as long as disclosure is made the day that the government witnesses are scheduled to testify in court.").

references a portion of the transcript describing the victim's violence with the witness's mother, and not of the incident resulting in the charged offense. This is not relevant to the case at hand. Petitioner fails to show how counsel was presented [sic] from presenting overt, hostile or violent acts of the victim towards the defendant.

Furthermore, the record, as well as the appellate decision, reflects that defense counsel did in fact present evidence supporting the defense's theory of self-defense. The court finds no merit to this claim.[21]

As to the remaining aspects of the claim, the district court then continued:

Petitioner fails to state with any particularity the factual basis for relief. LSA-C.Cr.P. art. 926(3). Petitioner claims that the trial court erred in limiting defense counsel's cross-examination of Desmond Parker in regards to the victim's violence and overt acts. However, as the State points out, the portions of the transcript which are referenced by petitioner refer to the testimony of Warren Mosely, not Desmond Parker. Petitioner fails to provide any evidence in support of this claim, and fails to show any prejudice. On the showing made, this claim will be denied.[22]

Petitioner thereafter sought review by the Louisiana Fifth Circuit Court of Appeal.

Likewise treating this as two separate claims, that court also denied relief. The Court of Appeal first held:

In its August 24, 2015 ruling, the district court considered relator's argument that the trial court erred in denying him the right to present his theory of self-defense and present the victim's violent propensities and overt acts toward him. Again, the district court, citing La. C.Cr.P. art. 926(B)(3), denied his claim on the basis that relator failed to state with any particularity the factual basis for relief. Further, the district court noted that the record, as well as the appellate decision, reflected that trial counsel did present evidence supporting defense's theory of self-defense.

Here, we find that relator has failed to demonstrate how the district court erred in its denial of his claim that the trial court prevented him from presenting his self-defense theory. Thus, we denied relief.[23]

The Court of Appeal then continued:

---

[21] State Rec., Vol. 2 of 8, Order dated August 24, 2015, p. 2.
[22] Id. at pp. 2-3.
[23] State v. Lyons, No. 15-KH-637, at pp. 5-6 (La. App. 5th Cir. Nov. 3, 2015); State Rec., Vol. 3 of 8.

Again, regarding this claim, the district court, citing La. C.Cr.P. art. 926(B)(3), found that relator failed to state with any particularity the factual basis for relief and denied relief. In denying this claim, the district court stated: "However, as the State points out, the portions of the transcript which are referenced by petitioner refer to Warren Mosely, and not Desmond Parker. Petitioner fails to provide any evidence in support of this claim, and fails to show any prejudice."

Our review of the writ application and its attachments reveal that relator has failed to demonstrate how the district court erred in its denial of his claim that he was denied his right to confront his accusers and cross-examine the State's witnesses. Thus, we deny relief.[24]

The Louisiana Supreme Court then also denied relief, holding that petitioner's claim was "repetitive and/or unsupported. La.C.Cr.P. art. 930.2; La.C.Cr.P. art. 930.4."[25]

To be entitled to federal habeas relief, petitioner must show that the foregoing state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). For the following reasons, it is clear that he has not made that showing.

The United States Supreme Court has held: "Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984); accord Boyer v. Vannoy, 863 F.3d 428, 451 (5th Cir. 2017). However, the United States Supreme Court has expressly noted:

While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other

---

[24] Id. at p. 6.
[25] State v. Lyons, 199 So. 3d 1140 (La. 2016); State Rec., Vol. 8 of 8.

factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

Holmes v. South Carolina, 547 U.S. 319, 326 (2006).

Here, petitioner claimed self-defense, and he argues that he was unduly hampered in his ability to pursue that defense by the trial court's rulings curtailing the cross-examination of Desmond Parker.

To the extent that petitioner is contending that he was thwarted in his effort to have the jury made aware of evidence indicating that Decou, not petitioner, was the initial aggressor in this incident, that contention is clearly rebutted by the record. On both direct-examination and cross-examination, Parker testified extensively concerning the incident, and several parts of his testimony indicated that Decou instigated the confrontation and was the aggressor in the incident. Specifically, Parker testified:

(1)     Prior to the incident, **petitioner apologized** for wrongly accusing Parker's mother of interfering in petitioner's personal business, and **Parker was satisfied with that apology**.[26]

(2)     The following day, **Decou stated that he was not satisfied with the apology, and he prepared to fight petitioner**.[27]

(3)     Parker then witnessed the ensuing altercation and saw petitioner punch Decou, causing him to fall.[28]

(4)     Parker went to Decou and saw blood "squirting out of his side."[29]

---

[26] State Rec., Vol. 5 of 8, transcript of October 24, 2012, pp. 148 and 161-62.
[27] Id. at pp. 149 and 158-59.
[28] Id. at p. 151.
[29] Id. at p. 152.

(5)    Petitioner, who had briefly left, then returned to Decou, but Parker told petitioner to move away.[30]

(6)    **Parker speculated that Decou was "high" from smoking marijuana prior to the incident**.[31]

(7)    **Decou had a "bad temper" and was "frequently" in fights**.[32]

It is therefore clear that the defense was not deprived of the opportunity to make the jurors aware that Decou's actions provoked the altercation which resulted in his death.[33]

To the extent that petitioner is also contending that the trial court improperly limited in his attempt to elicit evidence that the victim had a propensity for violence, that contention is likewise meritless. As already noted, Parker testified that Decou had a "bad temper" and was "frequently" in fights. Moreover, although the trial court sustained the prosecutor's objection to a question concerning whether Decou had ever been convicted of violence against Parker's mother, that ruling was proper. On that issue, the transcript reflects the following exchange during the cross-examination of Parker:

Q.    … And if I could ask you about [Decou], one more thing, I mean [Decou] and your mother had an on and off relationship, right?

A.    Yes.

Q.    In fact, [Decou] had been convicted of beating your mom up.

---

[30] Id. at pp. 153, 156-57, and 173.
[31] Id. at pp. 163-66.
[32] Id. at p. 178.
[33] However, as explained later in this opinion in the discussion of petitioner's claim challenging the sufficiency of the evidence to support his conviction, the mere fact that Decou may have been the initial aggressor did not, in and of itself, entitle petitioner to respond unreasonably by employing deadly force and then claim self-defense. Accordingly, petitioner was not prevented from eliciting evidence that Decou was the aggressor; rather, the jurors simply rejected petitioner's contention that his actions constituted self-defense under the circumstances of the case.

MR. SCHLEGEL:
 Objection.

THE COURT:
 Sustained.

MR. REGAN:
 Note my objection.

MR. SCHLEGEL:
 I ask that it be stricken.

THE COURT:
 Stricken from the record.

MR. REGAN:
 Can we – may we approach?

(Whereupon the following proceedings were held at the bench).

MR. REGAN:
 Okay, I'm not exactly sure of the basis for the objection.  I know that he had been convicted of two counts of domestic violence against his mother in this very building at this point.

THE COURT:
 And how – how does that come in under the code of evidence?

MR. REGAN:
 It's an issue of – that will lead to other questions on cross-examination.  The man – excuse me.

THE COURT:
 You have to lower your voice.

MR. REGAN:
 [Decou] was a very violent individual.  [Decou] was not only aggressive toward my client, but towards his mother at this point, and it's relevant, probative material to this case, and it's factually correct.  He has a propensity for violence.

MR. SCHLEGEL:
 It's objectionable at this point.  The case law may be on his side, but at this point, to this witness, it is not.  If his client gets on the stand and says I was worried

because he's such a violent person, maybe.  I still would object at that point, but right now, right here, objection.

MR. REGAN:
      What we've heard already, which opened the door, is your witness says that – that this fellow got into his fighting mode at this point, dressed for the fight at this point, wasn't satisfied with the apology and was looking for a fight at this point –

MR. SCHLEGEL:
      And I didn't object.

MR. REGAN:
      – and a fight he got, okay.

THE COURT:
      Lower your voice.

MR. REGAN:
      He is – is an aggressive individual that fights often, including being convicted of beating his mother, and that demonstrates this man's propensity for violence.  This – not only does this fellow know this, it's documented in the court building, in this very court.  I have the papers in my hand.

THE COURT:
      We don't know if he knows it, and the State's right.  The Court's ruling doesn't change.  Your objection's noted for the record.[34]

Under Louisiana law, such evidence concerning a victim's prior convictions for crimes of violence is admissible only under specific and limited circumstances.  Specifically, with respect cases such as this one:

> Evidence of the dangerous character of the victim is admissible only if the accused first produces evidence that, at the time of the incident, the victim made a hostile demonstration or committed an overt act against the accused of such character that would have created, in the mind of a reasonable person, a belief that he was in immediate danger of losing his life or suffering great bodily harm.  *Once evidence of an overt act by the victim is established, evidence of threats and of the victim's dangerous character is admissible for two distinct purposes:  (1) to show the defendant's reasonable apprehension of danger that would justify his conduct, and (2) to help determine who was the aggressor in the conflict.  In order for*

---

[34] State Rec., Vol. 5 of 8, transcript of October 24, 2012, pp. 175-77.

> *evidence to be admissible to show the defendant's reasonable apprehension of*
> *danger, it must be shown that the defendant knew of the victim's prior acts of*
> *violence or reputation for violence.* On the other hand, if the evidence is to be
> introduced to help determine who was the aggressor in the conflict, there is no
> requirement that the defendant have knowledge of the victim's prior acts or
> reputation. *However, only evidence of general reputation, not evidence of specific*
> *acts or personal opinion, is admissible to establish who was the aggressor.*

State v. Brice, 808 So. 2d 615, 619 (La. App. 1st Cir. 2001) (citations omitted; emphasis added).

Here, it was improper for defense counsel to ask Parker about Decou's prior convictions

for either of those two purposes. Any evidence concerning Decou's convictions were inadmissible

to show *the reasonableness of petitioner's apprehension* because it was not established that

*petitioner knew of those convictions* at the time of the instant offense. See id. Further, the

convictions were also inadmissible as evidence that Decou was the *aggressor* in the instant case,

because the prior convictions were evidence of *specific acts*, not simply of Decou's general

reputation. See id. at 619-20.

Because evidence concerning Decou's convictions were inadmissible under Louisiana law,

and because petitioner has not established that the Louisiana evidentiary rules at issue serve no

legitimate purpose or are disproportionate to the ends that they are asserted to promote, he has not

shown that the trial court's rulings deprived him of his due process right to a meaningful

opportunity to present a complete defense. See Holmes v. South Carolina, 547 U.S. 319, 326

(2006).

Lastly, to the extent that petitioner alternatively attempts to couch his claim as a violation

of the Confrontation Clause, that tactic fares no better. The United States Supreme Court has

explained:

> The Confrontation Clause of the Sixth Amendment guarantees the right of
> an accused in a criminal prosecution "to be confronted with the witnesses against

him."  The right of confrontation, which is secured for defendants in state as well
as federal criminal proceedings, <u>Pointer v. Texas</u>, 380 U.S. 400, 85 S.Ct. 1065, 13
L.Ed.2d 923 (1965), "means more than being allowed to confront the witness
physically."  <u>Davis v. Alaska</u>, 415 U.S., at 315, 94 S.Ct., at 1110. Indeed, "'[t]he
main and essential purpose of confrontation is *to secure for the opponent the
opportunity of cross-examination*.'"  <u>Id</u>., at 315-316, 94 S.Ct., at 1110 (quoting 5 J.
Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)) (emphasis in original).

<u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678 (1986).  However, the Supreme Court continued:

[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned
to impose reasonable limits on such cross-examination based on concerns about,
among other things, harassment, prejudice, confusion of the issues, the witness'
safety, or interrogation that is repetitive or only marginally relevant.  And as we
observed earlier this Term, "the Confrontation Clause guarantees an *opportunity*
for effective cross-examination, not cross-examination that is effective in whatever
way, and to whatever extent, the defense might wish."  <u>Delaware v. Fensterer</u>, 474
U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (*per curiam*) (emphasis in
original).

<u>Id</u>. at 679.

Here, at worst, the defense was prohibited only from presenting evidence of Decou's prior

convictions for entirely unrelated acts of domestic violence against a third person – or, more

precisely, was prohibited from presenting such evidence at least until the defense first complied

with Louisiana's evidentiary requirement that it be shown that petitioner actually knew of those

convictions at the time of the instant offense.  However, that evidentiary requirement, and the trial

judge's enforcement of it, is obviously reasonable.  First, an accused person obviously cannot

legitimately claim that he resorted to self-defense due to his apprehension over convictions of

which he was unaware.  Second, such evidence is particularly susceptible to misuse by some jurors

who might be prone to improperly discount crimes against a victim they consider to be a "bad

person" due to his own unrelated criminal history.  In light of such considerations, it simply cannot

be said that the federal Confrontation Clause was violated by the trial court's enforcement of this

narrow state-law exception which restricts evidence on this one limited type of evidence concerning a victim's criminal propensities, especially where, as here, the defense had (and in fact took advantage of) great latitude to establish those very same propensities through other types of evidence that did not pose a similar risk of confusion of the issues.

For all of these reasons, this claim should be denied.

### C.  Insufficient Evidence

Petitioner also claims that there was insufficient evidence to support his conviction.  In the state post-conviction proceedings, the district court denied that claim, holding:

> Petitioner claims that the court erred in its finding defendant guilty as charged, despite instructions of self-defense.  As the State points out in its response, the State provided evidence to negate defendant's claim of self-defense beyond a reasonable doubt.  The jury heard from three eye-witnesses of the incident.  The jury heard testimony that the victim ran away after the defendant pulled out a knife, and also that the victim pulled a knife from his back pocket.  However, the forensic death investigator and paramedic testified that he found a knife in the victim's pocket that was folded and closed with no blood.  The jury is the ultimate finds [sic] of fact, and determines witness credibility.  There was clearly sufficient evidence for the jury to reach this conclusion.  The court finds no merit to this claim.[35]

Petitioner thereafter sought review by the Louisiana Fifth Circuit Court of Appeal.  That court likewise denied relief, holding:

> With respect to this claim, relator contends that the trial court erred in denying his claim that the evidence was insufficient in his case, where he claimed the killing was in self-defense.  In its ruling, the district court noted that:  "The jury is the ultimate [finder] of fact, and determines witness credibility.  There was clearly sufficient evidence for the jury to reach this conclusion."
>
> Our review of this writ application reveals that the trial court could have found that relator was procedurally barred from raising this claim, which was known to him yet inexcusably not raised on appeal.  See State v. Gaines, 97-1327 (La. App. 4th Cir. 9/17/97), 701 So.2d 688, 693, writ denied, 97-2610 (La. 4/24/98), 717 So.2d 1160.  However, the trial court reviewed the merits of relator's claim and

---

[35] State Rec., Vol. 2 of 8, Order dated August 24, 2015, p. 3.

found that relator failed to meet his burden of proof under La. C.Cr.P. art. 930.2. We find no error in that denial.[36]

The Louisiana Supreme Court then also denied relief, holding that petitioner's claim was "repetitive and/or unsupported. La.C.Cr.P. art. 930.2; La.C.Cr.P. art. 930.4."[37]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that he has made no such showing.

Claims challenging the sufficiency of the evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes

---

[36] State v. Lyons, No. 15-KH-637, at pp. 6-7 (La. App. 5th Cir. Nov. 3, 2015); State Rec., Vol. 3 of 8.
[37] State v. Lyons, 199 So. 3d 1140 (La. 2016); State Rec., Vol. 8 of 8.

disagree, the inevitable consequence of this settled law is that judges will sometimes encounter

convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Applying

that stringent standard, the Court finds that petitioner is not entitled to relief for the following

reasons.

In the instant case, petitioner conceded that he killed the victim; he merely claimed that he

was not guilty because he had acted in self-defense, noting that trial testimony showed that Decou

was the initial aggressor who instigated the fight.  That, however, is not determinative under

Louisiana law.  As the state courts have explained:

> A homicide is justifiable if committed by one in defense of himself when
> he reasonably believes that he is in imminent danger of being killed or receiving
> great bodily harm and that the homicide is necessary to save himself from that
> danger.  La.Rev.Stat. 14:20(1).  When a defendant claims self-defense, the State
> has the burden of proving beyond a reasonable doubt that the defendant did not act
> in self-defense.  State v. Lynch, 436 So.2d 567 (La. 1983); State v. Brumfield, 93-
> 2404 (La.App. 4 Cir. 6/15/94), 639 So.2d 312.  Regarding self-defense, it is
> necessary to consider whether the defendant had a reasonable belief that he was in
> imminent danger of losing his life or receiving great bodily harm and whether the
> killing was necessary, under the circumstances, to save the defendant from that
> danger.  State v. McClain, 95-2546 (La.App. 4 Cir. 12/11/96), 685 So.2d 590.
> Although there is no unqualified duty to retreat, the possibility of escape is a factor
> in determining whether or not the defendant had a reasonable belief that deadly
> force was necessary to avoid the danger.  Id.

State v. Pleasant, 772 So. 2d 910, 916-17 (La. App. 4th Cir. 2000).  Accordingly, the mere fact

that Decou may have been the initial aggressor did not, in and of itself, entitle petitioner to respond

unreasonably by employing deadly force.  See, e.g., State v. Taylor, 721 So. 2d 929, 932 (La. App.

1st Cir. 1998) ("Even if the victim herein was initially the aggressor, it was unreasonable for

defendant to respond with deadly force."); see also State v. Johnson, No. 2010 KA 0127, 2010 WL

2342819, at *5 (La. App. 1st Cir. June 11, 2010) ("Even assuming that [the victim] was initially

the aggressor, it was unreasonable for the defendant to respond with deadly force.").

This is true even in light of the fact that some of the defense witnesses testified that Decou drew the knife during the fight, because some of the state's witnesses testified that it was *petitioner*, not Decou, who drew the knife.  Obviously, the jurors simply found the state's witnesses more credible on that factual issue.  Where a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed *in the light most favorable to the prosecution*, it simply cannot be said that the guilty verdict was *irrational*.  Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, under the deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

### D.  Denial of Motions for Continuance and New Trial

Petitioner's next claim is that his rights were violated when the trial court denied a motion for a continuance, as well as a motion for a new trial based on the discovery of new eyewitnesses,

including Ashley Jordan.  In the state post-conviction proceedings, the district court denied that

claim, holding:

> Petitioner fails to state with any particularity the factual basis for relief.
> LSA-C.Cr.P. art. 926(3).  Petitioner provides no facts or evidence in support of this
> claim.  He does not provide how a continuance would have affected the outcome,
> or what would have resulted with a Motion for New Trial, or what this testimony
> of Ashley Jordan would render.  The court finds this claim is speculative and
> conclusory.  On the showing made, he is not entitled to relief.[38]

Petitioner thereafter sought review by the Louisiana Fifth Circuit Court of Appeal.  That

court likewise denied relief, holding:

> Regarding relator's … claim, the district court, citing La. C.Cr.P. art.
> 926(B)(3), again denied the claim because relator failed to state with any
> particularity the factual basis for relief.  In its denial, the district court found that
> relator "does not provide how a continuance would have affected the outcome, or
> what would have resulted with a Motion for New Trial, or what this testimony of
> Ashley Jordan would render."  Thus, the district court concluded that this claim was
> speculative and conclusory.
> Upon review, we find that relator fails to demonstrate any abuse in the
> district court's denial of his application for post conviction relief based on its
> determination that relator failed to show how the continuance would have affected
> the outcome of the trial or to what Ashley Jordan would have testified.  Therefore,
> on the showing made, we find no error in its ruling.[39]

The Louisiana Supreme Court then also denied relief, holding that petitioner's claim was

"repetitive and/or unsupported.  La.C.Cr.P. art. 930.2; La.C.Cr.P. art. 930.4."[40]

This Court notes that the state district court denied both a motion to continue *the trial* and

motion to continue *a hearing on a motion for a new trial*.  It is unclear which of those two denials

petitioner is challenging herein.  Nevertheless, the undersigned finds that neither denial violated

petitioner's constitutional rights.

---

[38] State Rec., Vol. 2 of 8, Order dated August 24, 2015, p. 3.
[39] State v. Lyons, No. 15-KH-637, at pp. 8-9 (La. App. 5th Cir. Nov. 3, 2015); State Rec., Vol. 3 of 8.
[40] State v. Lyons, 199 So. 3d 1140 (La. 2016); State Rec., Vol. 8 of 8.

As to the motion to continue the trial, the record reflects that defense counsel moved for that continuance at the commencement of trial in order to locate Randon Brown, an eyewitness to the crime. Defense counsel stated that "other than [the need to locate Brown], we're ready to go to trial."[41] The prosecutor objected to the continuance, noting that court had previously granted a motion for a continuance for that same purpose.[42] The court denied the motion, stating:

> The offense in this matter occurred on October 18th, 2011. Today's date is October 23rd, 2012. Mr. Regan's office has represented the defendant, Trent Lyons, throughout the matter. The matter was previously continued because of the need to locate this witness. The motion is denied.[43]

With respect to claims challenging the denial of a motion for a continuance of trial, the United States Fifth Circuit Court of Appeals has held:

> When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process. See Gandy v. Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978); Shirley v. North Carolina, 528 F.2d 819, 822 (4th Cir. 1975).
>
> The Supreme Court addressed this subject in Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964):
>
> > The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. (Citations omitted.)

---

[41] State Rec., Vol. 4 of 8, transcript of October 23, 2012, p. 11.
[42] Id. at p. 12.
[43] Id. at p. 19.

When a motion for a continuance for the purpose of securing defense witnesses is denied, our cases have identified the following factors in considering whether denial of the motion was an abuse of the trial court's discretion:

> the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

United States v. Uptain, 531 F.2d at 1287 (footnotes omitted).

Hicks v. Wainright, 633 F.2d 1146, 1148-49 (5th Cir. 1981). The Fifth Circuit has further held:

> The petitioner making [a claim that the denial of a continuance rendered his trial fundamentally unfair in violation of his right to due process] must show prejudice from the denial of the continuance .…
> The requisite showing of prejudice for claims of denials of due process is the same as that for allegations of ineffective assistance of counsel: the petitioner must establish a reasonable probability that the granting of a continuance would have permitted him to adduce evidence that would have altered the verdict.

McFadden v. Cabana, 851 F.2d 784, 788 (5th Cir. 1988) (quotation marks omitted; emphasis added).

Here, petitioner clearly cannot show that he was prejudiced by the denial of the motion to continue the trial for the purpose of locating Randon Brown. Despite the fact that the requested continuance was denied, **the defense was nevertheless able to quickly locate Brown, and he in fact testified for the defense at trial**.[44] Petitioner has not explained, and this Court cannot fathom, what prejudice conceivably resulted from the denial of a continuance that ultimately proved to be unnecessary. Therefore, the undersigned has no basis for concluding that the state court's decision rejecting petitioner's claim concerning the denial of the trial continuance "was contrary to, or

---

[44] State Rec., Vol. 6 of 8, transcript of October 25, 2012, pp. 80-109.

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, under the deferential standards of review mandated by the AEDPA, this Court should likewise deny relief.

As to the motion to continue the hearing on the motion for new trial, petitioner likewise cannot show that relief is warranted with respect to the denial of that motion.[45] Federal habeas relief is not available even based on a claim that a state court refused to hold *any* hearing on a motion for a new trial. See, e.g., Haygood v. Quarterman, 239 Fed. App'x 39, 42 (5th Cir. 2007); Hudson v. Director, TDCJ-CID, Civ. Action No. 1:09-CV-706, 2012 WL 3600479, at *8 (E.D. Tex. July 9, 2012), adopted, 2012 WL 3597772 (E.D. Tex. Aug. 20, 2012); Hood v. Dretke, No. 3:03-CV-2167, 2005 WL 1249440, at *4 (N.D. Tex. May 26, 2005), adopted, 2005 WL 1511289 (N.D. Tex. June 24, 2005). Therefore, it necessarily follows that a petitioner cannot be granted relief simply because a court takes the lesser action of refusing to continue such a hearing.

Lastly, as to petitioner's claim that the trial court erroneously denied his motion for a new trial, that claim should be rejected because a trial court's erroneous denial of a motion for new trial is not alone sufficient to warrant federal habeas relief. See Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("Dickerson argues that the state court violated the Louisiana Code of Criminal Procedure and state jurisprudence interpreting the Code [in its denial of his motion for a new trial]. We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law. Dickerson has failed to show that the state court's denial of his motion for new trial constituted a violation of any constitutional right. This claim, therefore, provides no

---

[45] State Rec., Vol. 7 of 8, transcript of January 11, 2013, pp. 55-57.

basis for habeas corpus relief." (footnote, citations, and quotation marks omitted)); see also Johnson v. Cain, Civ. Action No. 16-927, 2017 WL 5176386, at *23 (E.D. La. Apr. 25, 2017) ("Simply put, a denial of a motion for new trial does not violate an independent, cognizable federal constitutional right."), adopted, 2017 WL 5157604 (E.D. La. Nov. 7, 2017); Colbert v. Cain, Civ. Action No. 14-2472, 2016 WL 4186551, at *11 (E.D. La. Apr. 12, 2016) ("[T]o the extent petitioner is also arguing that his post-trial motions were erroneously denied, a denial of such motions does not violate an independent, cognizable federal constitutional right."), adopted, 2016 WL 4161257 (E.D. La. Aug. 5, 2016).  Moreover, in any event, the Court notes that the motion for new trial was in fact properly denied for the reasons explained in detail later in this opinion.[46]

### E.  Loss of Mitigation Evidence

Petitioner also claims that his rights were violated by the fact that the police lost the shirt he wore during the altercation.  He argues that the lost evidence would have supported his claim of self-defense, in that the shirt "would have shown evidence of defensive wounds and that [petitioner] was in a struggle for his life."[47]  He complains that the trial court erred in failing to resolve this issue during trial.

In the state post-conviction proceedings, the district court denied that claim, holding:

> Petitioner claims that he was prejudiced by the loss of the shirt he wore at the time of the murder, and had Detective Beavers not lost the shirt, and that the shirt was of significant relevance to proving self-defense.  He argues that had the evidence not been lost, the outcome of the trial would have been different.  The State argues that this claim is procedurally barred under LSA-C.Cr.P. art. 930.4(C), which state[s] that if an application raises a claim which petitioner raised at the trial court and inexcusably failed to pursue on appeal, the court shall deny relief.  Thus, the court finds this claim procedurally barred.

---

[46] See infra pages 49-51.
[47] Rec. Doc. 4, p. 35.

Furthermore, the court finds that the missing shirt was not as significant as petitioner claims, as petitioner had photographs taken at the law office prior to turning himself in to Jefferson Parish jail.  The shirt would merely have corroborated the photographs.[48]

Petitioner thereafter sought review by the Louisiana Fifth Circuit Court of Appeal.  That court likewise denied relief, holding:

[R]elator argues that the district court erred in failing to consider his claim that he was prejudiced by the loss of the shirt that he wore at the time of the underlying offense.  The district court found that the claim was procedurally barred under La. C.Cr.P. art. 930.4(C) as it was known to relator during the proceedings below yet not pursued on appeal.  In fact, the State pointed out, at trial, relator "entered a stipulation that the white shirt [he] was wearing at the time of [the] murder was lost or misplaced by officers."  Further, the trial court noted that "the missing shirt was not as significant as petitioner claims, as petitioner had photographs taken at the law office prior to turning himself in to Jefferson Parish jail.  Upon review, we find no error in the trial court's finding that relator was procedurally barred from raising this issue.  See Gaines, supra.[49]

The Louisiana Supreme Court then also denied relief, holding that petitioner's claim was "repetitive and/or unsupported.  La.C.Cr.P. art. 930.2; La.C.Cr.P. art. 930.4."[50]

In light of the foregoing rulings, the state argues that this claim is procedurally barred from federal review.  The United States Fifth Circuit Court of Appeals has held:

A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.

---

[48] State Rec., Vol. 2 of 8, Order dated August 24, 2015, p. 3.
[49] State v. Lyons, No. 15-KH-637, at p. 9 (La. App. 5th Cir. Nov. 3, 2015); State Rec., Vol. 3 of 8.
[50] State v. Lyons, 199 So. 3d 1140 (La. 2016); State Rec., Vol. 8 of 8.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  Moreover, "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

Here, the state courts clearly denied this claim based on La. Code Crim. P. art. 930.4(C), which provides:  "If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court shall deny relief."  It is well-established that article 930.4(C) is an independent and adequate state procedural rule sufficient to procedurally bar a claim from federal habeas review.  See, e.g., Ayo v. Cain, Civ. Action No. 13-4580, 2015 WL 8475523, at *6 (E.D. La. Oct. 26, 2015), adopted, 2015 WL 8334524 (E.D. La. Dec. 9, 2015); Brown v. Cain, Civ. Action No. 11-2267, 2011 WL 7042222, at *8 (E.D. La. Dec. 20, 2011), adopted, 2012 WL 123288 (E.D. La. Jan. 17, 2012), aff'd, 535 Fed. App'x 356 (5th Cir. 2013); Thomas v. Cain, Civ. Action No. 11-2408, 2011 WL 6046536, at *5 (E.D. La. Nov. 17, 2011), adopted, 2011 WL 6028779 (E.D. La. Dec. 5, 2011); Young v. Travis, Civ. Action No. 07-3542, 2011 WL 494811, at *8 (E.D. La. Jan. 13, 2011), adopted, 2011 WL 494802 (E.D. La. Feb. 4, 2011); Jones v. Cain, Civ. Action No. 10-0187, 2010 WL 3312592, at *5-6 (E.D. La. July 29, 2010), adopted, 2010 WL 3312594 (E.D. La. Aug. 19, 2010); Green v. Cooper, Civ. Action No. 06-1657, 2009 WL 87590, at *10 (E.D. La. Jan. 8, 2009).

Where, as in the instant case, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result

in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). In light of petitioner's ineffective assistance of appellate counsel claim discussed *infra*, the Court assumes that petitioner would argue that his appellate counsel's alleged ineffectiveness was the purported cause for this default. However, as discussed later in this opinion, appellate counsel was *not* ineffective in this respect.[51] Where, as here, a petitioner's ineffective assistance of counsel claim is meritless, it cannot serve as cause for a procedural default. Sherill v. Hargett, 184 F.3d 1172, 1176 (10th Cir. 1999); Turner v. Compoy, No. 91-55842, 1993 WL 425372, at *3 n.2 (9th Cir. Oct. 19, 1993); Bella v. Cain, Civ. Action No. 12-2323, 2015 WL 1311216, at *16 (E.D. La. Mar. 23, 2015); Arita v. Cain, Civ. Action No. 11-636, 2011 WL 4738666, at *11 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 Fed. App'x 352 (5th Cir. 2012).

Because the purported ineffectiveness of appellate counsel cannot serve as cause for the default of this claim, and because petitioner has established no other cause for default of the claim, the Court need not consider whether actual prejudice would result from the application of the

---

[51] See *infra* page 51.

procedural bar.  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996) ("Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice.").

In that petitioner has not met the "cause and prejudice" test, this claim is barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice."  In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley, 243 F.3d at 220 (citations omitted).  However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995).  Here, petitioner presents no new evidence of the type or caliber referenced in Schlup.  Moreover, ample evidence of his guilt was introduced at trial.  Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, this claim is procedurally barred and should not be considered by this Court.

However, out of an abundance of caution, the Court additionally notes that this claim also fails on the merits.  The United States Supreme Court has held that "*unless a criminal defendant can show bad faith on the part of the police*, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  Arizona v. Youngblood, 488 U.S. 51, 58 (1988)

(emphasis added).  Here, all evidence suggested that the shirt was merely lost by the police, not intentionally destroyed or otherwise intentionally made unavailable to the defense.  With no evidence of bad faith on the part of the police, petitioner's claim necessarily fails on the merits.

### F.  Ineffective Assistance of Counsel

Petitioner's final claim is that he received ineffective assistance of counsel both at trial and on appeal.  In the state post-conviction proceedings, the district court denied that claim, holding:

> Petitioner claims ineffective assistance of counsel for counsel's failure to file pre-trial motions, to consult investigative facts, failure to cross-examine State's key witnesses, failure to impeach witnesses, failure to present facts of self-defense. Petitioner also claims that appellate counsel was ineffective in failing to raise claims on direct appeal concerning right to present defense, court erred in limiting cross-exam, counsel's deficiency due to illness, and failure to prepare.
>
> It is clear that the petitioner has a Sixth Amendment right to effective legal counsel.  Under the well-known standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and State v. Washington, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.  State v. Legrand, 2002-1462 (La. 12/3/03), 864 So.2d 89.
>
> To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted.  It is absolutely essential that both prongs of the Strickland test must be established before relief will be granted by a reviewing court.
>
> Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation.  Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.  State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.
>
> Mindful of controlling federal and state jurisprudence, this court now turns to the specific claims of ineffective assistance made in the instant application and argued in the petitioner's memorandum of support.

<u>Failure to fire [sic] pre-trial motions</u>
        Petitioner fails to state with any particularity the factual basis for relief. LSA-C.Cr.P. art. 926(3).  Petitioner does not state which motions counsel failed to file, or how he was prejudiced.  The court finds this claim speculative and conclusory.  Petitioner fails to meet the standard of <u>Strickland</u>.  On the showing made, this claim will be denied.

<u>Failure to investigate facts</u>
        Petitioner fails to state with any particularity the factual basis for relief. LSA-C.Cr.P. art. 926(3).  Petitioner fails to provide what further investigation or meetings with his attorney would render.  The court finds this claim speculative and conclusory.  Petitioner fails to meet the standard of <u>Strickland</u>.  On the showing made, this claim will be denied.

<u>Failure to effectively cross-examine witness regarding victim as aggressor</u>
        Petitioner fails to state with any particularity the factual basis for relief. LSA-C.Cr.P. art. 926(3).  Petitioner does not explain how counsel did not adequately cross examine the witness, Desmond Parker.  The State points out in its response that defense counsel brought out several specific examples of the victim being aggressive in cross-examination.  Petitioner fails to provide how counsel was deficient, and does not prove prejudice.  Petitioner's claim is conclusory, and fails to meet the standard of <u>Strickland</u>.  On the showing made, this claim will be denied.

<u>Impeachment of witness</u>
        Petitioner fails to state with any particularity the factual basis for relief. LSA-C.Cr.P. art. 926(3).  Petitioner fails to provide any facts or evidence for this claim.  Petitioner fails to provide how counsel was deficient in cross-examining Gary, or how he was prejudiced.  Petitioner fails to meet the standard of <u>Strickland</u>. On the showing made, this claim will be denied.

<u>Failure to present facts and evidence regarding self-defense</u>
        Petitioner fails to state with any particularity the factual basis for relief. LSA-C.Cr.P. art. 926(3).  Petitioner's allegation is conclusory, and he does not provide any facts or evidence in support.  Petitioner fails to meet the standard of <u>Strickland</u>.  On the showing made, this claim will be denied.

<u>Appellate counsel's failure to raise claims on appeal</u>
        In reviewing claims of ineffective assistance of counsel on direct appeal, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the defendant.["]  <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985).  The Court gives great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and

at most a few key issues.["]  Jones v. Barnes, 463 U.S. 745 (1983).  This is true even where the weaker arguments have merit.  Id. at 751-2.

When the claim of ineffective assistance of appellate counsel is based on failure to raise the issue on appeal, the prejudice prong of the Strickland test requires the petitioner to establish that the appellate court would have granted relief, had the issue been raised.  United States v. Phillips, 210 F.3d 345, 350 (5 Cir. 2000).

The court finds to merit to petitioner's claims of ineffective appellate counsel.  The court finds petitioner's allegations speculative and conclusory, as petitioner fails to prove any claims that appellate counsel should have presented on appeal, and that would have changed the outcome and caused the appellate court to grant relief.  On the showing made, this relief as to this claim will be denied.[52]

Petitioner thereafter sought review by the Louisiana Fifth Circuit Court of Appeal.  That

court likewise denied relief, holding:

In its August 24, 2015 ruling, the district court considered the following claims of ineffective assistance of trial counsel:  1) failing to file pre-trial motions; 2) failing to consult investigative facts; 3) failing to cross-examine the State's witnesses; 4) failing to impeach the State's witnesses; and 5) failing to present facts to support his self-defense theory.  Further the district court also considered relator's claim that appellate counsel was ineffective for failing to raise claims on direct appeal concerning his right to present a defense; the trial court erred in limiting cross-examination; appellate counsel's deficiencies due to his illness; and failing to prepare.

A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana State Constitution.  When a defendant seeks reversal of a conviction based on ineffective assistance of counsel, he must establish two separate elements to succeed:  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

"It is not enough for an accused to make allegations of ineffectiveness; the accused must couple these allegations with a specific showing of prejudice."  State v. Brown, 99-172 (La. App. 5 Cir. 09/28/99), 724 So.2d 1051, 1058 citing State v. Morris, 98-236 (La. App. 5 Cir. 9/16/98), 719 So.2d 1076.  Further, there is a strong presumption that defense counsel's performance is within a wide range of effective representation.  State v. Soler, 93-1042 (La. App. 5 Cir. 4/26/93), 636 So.2d 1069,

---

[52] State Rec., Vol. 2 of 8, Order dated August 24, 2015, pp. 1-2.

1075, <u>writs denied</u>, 94-475 (La. 4/4/94), 637 So.2d 450 and 94-1361 (La. 11/4/94), 644 So.2d 1055.

In this case, the district court reviewed each of relator's "specific claim" of ineffective assistance of trial counsel and, citing La. C.Cr.P. art. 923(B)(3),[FN 1] found that relator failed to state with any particularity the factual basis for relief. Upon review, we find no error in this ruling. Relator has failed to demonstrate or provide evidence that trial counsel was ineffective for failing to file pre-trial motions; failing to investigate facts; failing to cross-examine the State's witness regarding the victim as the aggressor; failing to impeach the State's witness; and failing to present facts and evidence in support of the self-defense theory.

[FN 1] La. C.Cr.P. art. 926(B)(3) states: "The petition must allege: (3) A statement of the grounds upon which relief is sought, specifying with reasonable particularity the factual bases for such relief."

Next, the district court also considered relator's allegation that appellate counsel was ineffective for failing to argue certain claims on appeal and found no merit to the claim. The district court found that relator's allegations were speculative and conclusory and failed to prove any claims that, if presented on appeal, would have caused the appellate court to grant relief.

We agree, as the district court noted, that appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant." Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (emphasis in original). Again, we find no error in the district court's ruling. See State v. Francois, 13-616 (La. App. 5 Cir. 1/31/14), 134 So.3d 42, 59 ("When the substantive issue that an attorney has not raised is without merit, then the claim that the attorney was ineffective for failing to raise the issue also has no merit.").

In sum, we find that relator has failed to meet his burden of proving that either trial or appellate counsel's performance was deficient or that the deficiency prejudiced him. See Strickland, *supra.*[53]

The Louisiana Supreme Court then also denied relief, holding: "Relator fails to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) …."[54]

---

[53] State v. Lyons, No. 15-KH-637, at pp. 3-5 (La. App. 5th Cir. Nov. 3, 2015); State Rec., Vol. 3 of 8.
[54] State v. Lyons, 199 So. 3d 1140 (La. 2016); State Rec., Vol. 8 of 8.

As the state courts correctly noted, the clearly established federal law concerning ineffective assistance of counsel claims is founded on the United States Supreme Court's decision in Strickland. In that case, the Supreme Court established a two-prong test for evaluating ineffective assistance of counsel claims. Specifically, a petitioner seeking relief on such a claim is required to show both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 697. The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct

of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.  In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.  On the other hand, to prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274 F.3d at 210.

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims on the merits unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Further, the United States

Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an

ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the
> Strickland standard was unreasonable. This is different from asking whether
> defense counsel's performance fell below Strickland's standard. Were that the
> inquiry, the analysis would be no different than if, for example, this Court were
> adjudicating a Strickland claim on direct review of a criminal conviction in a United
> States district court. Under AEDPA, though, it is a necessary premise that the two
> questions are different. For purposes of § 2254(d)(1), an unreasonable application
> of federal law is different from an incorrect application of federal law. A state court
> must be granted a deference and latitude that are not in operation when the case
> involves review under the Strickland standard itself.
>     A state court's determination that a claim lacks merit precludes federal
> habeas relief so long as fairminded jurists could disagree on the correctness of the
> state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140,
> 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a
> rule application was unreasonable requires considering the rule's specificity. The
> more general the rule, the more leeway courts have in reaching outcomes in case-
> by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly
> established Federal law for a state court to decline to apply a specific legal rule that
> has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S.
> ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation
> marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then

explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-
> assistance claim can function as a way to escape rules of waiver and forfeiture and
> raise issues not presented at trial, and so the Strickland standard must be applied
> with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the
> very adversary process the right to counsel is meant to serve. Even under *de novo*
> review, the standard for judging counsel's representation is a most deferential one.
> Unlike a later reviewing court, the attorney observed the relevant proceedings,
> knew of materials outside the record, and interacted with the client, with opposing
> counsel, and with the judge. It is all too tempting to second-guess counsel's
> assistance after conviction or adverse sentence. The question is whether an
> attorney's representation amounted to incompetence under prevailing professional
> norms, not whether it deviated from best practices or most common custom.
>     Establishing that a state court's application of Strickland was unreasonable
> under § 2254(d) is all the more difficult. *The standards created by Strickland and*

> *§ 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (quotation marks omitted; emphasis added). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

Here, petitioner contends that trial counsel was ineffective for failing to file pretrial motions. However, as the state courts correctly observed, petitioner has failed to meet his burden of proof because he has not specifically identified any necessary and meritorious motions that went unfiled. <u>See, e.g.</u>, <u>United States v. Lewis</u>, 786 F.2d 1278, 1283 n.4 (5th Cir. 1986) ("Lewis has also claimed that [counsel] is to be faulted for filing an inadequate number of pretrial motions. … Lewis has not indicated how other motions would have led to a different result in his case. Counsel is not required to engage in the filing of futile motions. The filing of pretrial motions falls squarely within the ambit of trial strategy." (quotation marks omitted)); <u>Netter v. Cain</u>, Civ. Action No. 15-584, 2016 WL 7157028, at *12 (E.D. La. Oct. 6, 2016) (Petitioner must identify necessary motions that counsel failed to filed; "bald and unsupported speculation" that such motions went unfiled "is clearly insufficient to meet a petitioner's burden of proof."), <u>adopted</u>, 2016 WL 7116070 (E.D. La. Dec. 7, 2016); <u>Pichon v. Terrell</u>, Civ. Action No. 11-615, 2012 WL 6569758, at *6 (E.D. La. Oct.

1, 2012) ("[B]ecause petitioner has not identified any other types of pretrial motions which purportedly should have been filed and shown that such motions would have been beneficial to the defense, he has failed to prove either that counsel performed deficiently in this respect or that prejudice resulted."), adopted, 2012 WL 6569802 (E.D. La. Dec. 17, 2012); Lindsey v. Travis, Civ. Action No. 06-7852, 2007 WL 1237919, at *8 (E.D. La. Apr. 25, 2007) ("[P]etitioner has made no showing whatsoever that any meritorious pretrial motions were abandoned or left unfiled.... He simply has not shown that counsel's failure to pursue pretrial motions constituted deficient performance in any way, much less that prejudice resulted.").

Petitioner next argues that counsel failed to perform an adequate pretrial investigation. However, the state courts likewise rejected that claim as speculative and conclusory. That was also clearly correct.

As an initial matter, this Court notes that petitioner has failed to establish that counsel's investigation was inadequate in any respect. In fact, he has presented no evidence as to what investigative steps counsel actually took or failed to take. Without such evidence, he cannot show that counsel performed deficiently. Netter v. Cain, Civ. Action No. 15-584, 2016 WL 7157028, at *11 (E.D. La. Oct. 6, 2016), adopted, 2016 WL 7116070 (E.D. La. Dec. 7, 2016).

Further, even if petitioner had made that showing, he would then additionally have to prove that prejudice in fact resulted from the inadequate investigation. To make that showing, he must point to evidence in the record demonstrating that further investigation would have revealed additional information beneficial to the defense. See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th

42

Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). Here, petitioner has not even specified what additional evidence existed but was undiscovered, much less explained how that evidence (whatever it was) would have been beneficial to the defense. Therefore, his claim necessarily fails. See, e.g., United States v. Lewis, 786 F.2d 1278, 1283 (5th Cir. 1986) ("Lewis' claim that [counsel] conducted inadequate pretrial investigation is without merit. Lewis has not suggested what exculpatory evidence could have been uncovered by further investigation …. Since Lewis has not pointed out any evidence which would have been produced by more thorough investigation, much less evidence that would be sufficient to undermine confidence in the outcome of the trial, no prejudice has been shown.").

Equally meritless is petitioner's claim that counsel was ineffective for failing to adequately cross-examine Desmond Parker or to impeach Otis Gary. It is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005); accord Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 Fed. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 Fed. App'x 462 (5th Cir. 2009); Packnett v. Cain, Civ. Action No. 06-5973, 2008 WL 148486, at *11 (E.D. La. Jan. 10, 2008); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.

<u>Strickland</u>, 466 U.S. at 689.  Moreover, it is irrelevant that another attorney might have made other choices or handled such issues differently.  As the Supreme Court noted:  "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  <u>Id</u>.

Here, the record clearly disproves any suggestion that defense counsel failed to adequately cross-examine Desmond Parker.  Defense counsel in fact vigorously and exhaustively cross-examined Parker, eliciting a great number of details consistent with the defense theory of the case that Decou was the aggressor and the instigator of the confrontation which ultimately led to his death.[55]  Petitioner does not suggest what necessary questions went unasked during cross-examination and has not explained how he was prejudiced.

Petitioner's suggestion that counsel was ineffective for failing to impeach Gary is similarly unavailing.  Again, the record reveals that defense counsel vigorously and exhaustively cross-examined Gary,[56] and, as already noted herein, was even able to obtain a stipulation from the prosecutor to impeach Gary after he falsely testified that he had not sought state's assistance in resolving an outstanding criminal matter in exchange for his testimony at petitioner's trial.[57]  Petitioner has not established that there was an additional basis on which Gary could have been impeached but that defense counsel failed to pursue.

Petitioner also alleges that appellate counsel was ineffective.  As the state courts correctly noted in denying that claim, it is clear that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)."  <u>West v.</u>

---

[55] State Rec., Vol. 5 of 8, transcript of October 24, 2012, pp. 155-80.
[56] <u>Id</u>. at pp. 277-305.
[57] State Rec., Vol. 6 of 8, transcript October 25, 2012, pp. 14-15.  As also noted, the state declined Gary's proposal, and he ultimately received no such assistance in exchange for his testimony.  <u>Id</u>.

<u>Johnson</u>, 92 F.3d 1385, 1396 (5th Cir. 1996). Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." <u>Id</u>. at 753. As a result, the applicable test to be applied in assessing such a claim is whether the issue ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal. <u>See, e.g.</u>, <u>Diaz v. Quarterman</u>, 228 Fed. App'x 417, 427 (5th Cir. 2007); <u>accord</u> <u>Robbins</u>, 528 U.S. at 288.

On direct appeal in this case, appellate counsel asserted a single claim, namely: in light of the fact that petitioner claimed self-defense, the trial court erred by denying his motion in limine to prevent the State from referring to the deceased as the "victim" throughout trial. Although that claim was ultimately found to be without merit,[58] the claims petitioner proposes were no stronger.

---

[58] The Court of Appeal denied the claim, holding:

La.C.Cr.P. art. 771 condemns the use of remarks that are "irrelevant or immaterial and of such a nature that it might create prejudice against the defendant or the state, in the mind of the jury." <u>State v. Lewis</u>, 367 So.2d 1155, 1158 (La. 1979), *overruled in part on other grounds*, <u>State v. Holden</u>, 375 So.2d 1372 (La. 1979) (citing La.C.Cr.P. art. 771). In <u>Lewis</u>, the defendant complained that the prosecutor's reference to the complainant of a burglary as "the victim" was improper because it had the effect of arousing the jury's sympathies for the complainant. The Court found that using the terminology "the victim" did not fall into the categories of irrelevant and immaterial remarks which could prejudice the jury against the defense as stated in La.C.Cr.P. art. 771. <u>Id</u>. See also <u>State v. Williams</u>, 615 So.2d 1009, 1015 (La.App. 1 Cir.1993), <u>writ denied</u>, 93-767 (La. 1993), 619 So.2d 543 (the court found that the trial court did not err by denying the defendant's pre-trial motion in limine in regard to any references to "murder" and "victim" during the trial and any error was harmless).
    We find that using the terminology "the victim" to refer to the deceased does not fall into the category of irrelevant and immaterial remarks which could prejudice the jury. As explained by Dr. Garcia at trial, the manner of death was categorized as a homicide simply because it was a death of one human being at the hands of another. Accordingly, it appears that the use of the terminology "the victim" has no bearing on the validity of defendant's justification of self-defense. See <u>Lewis</u>, *supra*.

Specifically, in his federal application, he argues that appellate counsel should have raised the following four claims on direct appeal: (1) the trial court erred in limiting petitioner's right to present a defense and denying him the right to effectively cross-examine Desmond Parker; (2) there was insufficient evidence to support the conviction; (3) the trial court erred in denying the motion for a continuance and motion for a new trial; and (4) the trial court erred in not resolving and redressing the fact that the police lost mitigating evidence.[59]

As to petitioner's contention that he was denied the right to present a defense or to effectively cross-examine Desmond Parker, that contention, as already explained in detail earlier in this opinion, has no merit.

As to petitioner's suggestion that counsel should have asserted an insufficient evidence claim on direct appeal, that contention clearly fails because he cannot show that he was prejudiced by that omission. In the post-conviction proceedings, petitioner claimed that there was insufficient

---

Further, even if the trial court had erred by allowing the deceased to be referred to as "the victim," we find that the error was harmless. The indictment charged defendant with the second degree murder of Mr. Decou, and the jury was fully aware of the charged offense and that Mr. Decou was the alleged victim. See Williams, supra. Also, the trial as a whole was conducted fairly and there was considerable evidence of defendant's guilt. Several witnesses testified at trial that they observed the altercation between the deceased and defendant. Two witnesses, Mr. Mosely and Mr. Gary, testified to witnessing defendant chase the deceased down the street and stab him with a knife. Dr. Garcia testified that the deceased died as a result of a stab wound to the chest that perforated his lung, heart, and pulmonary artery. Therefore, even if the trial court erred in allowing the deceased to be referred to as "the victim" any error would be harmless. See State v. Olivieri, 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 214-15.

State v. Lyons, 134 So. 3d 36, 40-41 (La. App. 5th Cir. 2014); State Rec., Vol. 1 of 8.

[59] Rec. Doc. 4, p. 23. The state argues that the third and fourth proposed claims were not argued as part of petitioner's ineffective assistance of appellate counsel claim in the state courts and, therefore, those portions of his claim are unexhausted for the purposes of this federal proceeding. However, it is clear that a federal court has the authority to deny unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2). Because petitioner's argument that his appellate counsel was ineffective for failing to raise the third and fourth proposed claims is plainly meritless, it is recommended that it be rejected on that basis even if the United States District Judge finds that petitioner failed to properly exhaust those subparts on his claim.

evidence to support his conviction, and the state courts considered and denied that claim on the merits.  There is no reason to believe that they would have reached a contrary conclusion if that same claim had instead been asserted on direct appeal rather than on collateral review.  As noted, there was ample eyewitness evidence of petitioner's guilt, and the verdict simply hinged on whether jurors found the state's witnesses or the defense's witnesses more credible.  Such issues of credibility are properly within the province of the jury and, as such, are not second-guessed on either direct or collateral review.

The third proposed claim is likewise meritless.  As noted previously herein, petitioner was not prejudiced by the trial court's denial of a continuance to locate Randon Brown.  Despite that denial, defense counsel was still able to locate Brown in time and call him to testify at trial.  As to the trial court's refusal to continue the evidentiary hearing on the motion for new trial, as well as the trial court's ultimate denial of the motion for new trial, petitioner has not established that either of those rulings was erroneous for the following reasons.

Defense counsel moved for a new trial based on the discovery of three new eyewitnesses: Ashley Jordan; Everett Woolridge; and Christopher Williams.[60]  Of those three individuals, only Jordan appeared for the hearing on the motion for new trial.  After Jordan testified, the judge denied defense counsel's request to recess the hearing until the remaining witnesses could be produced:

> MR. REGAN:
>     Your Honor, we would ask that the – this motion for a new trial be recessed, that we did subpoena other witnesses that have either not been served or whatever.

---

[60] The defense had also located a fourth eyewitness, Jasmine Williams.  However, because she had not been listed in the motion for a new trial, she could not be called to testify at the hearing.  See State Rec., Vol. 7 of 8, transcript of January 11, 2013, pp. 28-31; see also La. Code Crim. Proc. art. 854.

Again, I know there's been an issue as to who was listed at this point. I think we have a witness or two that has been subpoenaed that is not here.

THE COURT:
        Well, the only – again, the only witnesses that were listed were Ashley Jordan, who has testified, Everett Woolridge, who has not appeared –

MR. REGAN:
        Yes, sir.

THE COURT:
        – and a Christopher Williams.

MR. REGAN:
        Yes, sir. I'd ask that the matter be held open until we can find out why they weren't served. I really don't know. I mean I sent it out through the parishes, and, apparently, as we find them, we do what we can, and, apparently, one parish said it had to go to Helena Parish, at this point, and that was on Mr. Woolridge, I believe, correct, and I'd ask that this matter be left open until Friday, a week.

MR. FORTUNATO [prosecutor]:
        But, judge, we've – this – this matter, as the Court is well aware, was set for sentencing first on November 5th and then on November 15th and on December 6th and now today.

THE COURT:
        Again, it has been 77 days since the verdict in this matter which the Court believes is more than sufficient time to prepare for a motion for new trial. The motion to continue the matter till a later date is denied.[61]

Under Louisiana law, a defendant is entitled to a continuance or a recess to secure the presence of a witness if, *inter alia*, the defendant shows that he used due diligence to procure the attendance of the witness. La. Code Crim. P. 709(A)(3); State v. Warren, 437 So.2d 836, 838 (La. 1983). Here, despite an extended period of time available to do so, defense counsel failed to ensure that Everett Woolridge and Christopher Williams were properly subpoenaed and served. Counsel's failure in that regard constitutes a lack of due diligence, and, therefore, the motion for a

---

[61] State Rec., Vol. 7 of 8, transcript of January 11, 2013, pp. 55-57.

recess or continuance was properly denied.  See, e.g., State v. Atkins, 360 So. 2d 1341, 1346 (La. 1978).

It is also evident that the trial court did not err in denying the motion for a new trial based on newly discovered evidence.  Louisiana law provides:

> The court, on motion of the defendant, shall grant a new trial whenever any of the following occur: …
>
> New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.

La. Code Crim. P. art. 851(B)(3).  Further:

> [T]he jurisprudence also imposes four requirements on this motion:  1) the evidence must have been discovered since the trial; 2) failure to learn of the evidence at the time of trial must not be due to defendant's lack of diligence; 3) it must be material to the issues at the trial; and 4) it must be of such a nature that it would probably produce an acquittal in the event of a retrial.  The trial court's application of these precepts to newly discovered evidence is entitled to great weight, and its denial of a new trial will not be disturbed on appeal absent a clear abuse of that discretion. In the evaluation of whether the newly discovered evidence warrants a new trial, the test employed is not simply whether another jury might return a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial.  Further, an application for a new trial on the ground of newly discovered evidence should be viewed with extreme caution.

State v. Payne, 171 So. 3d 348, 353-54 (La. App. 5th Cir. 2015) (citations omitted).

In the instant case, there is no reason to believe that, under those extremely deferential standards, the denial of the motion for new trial would have been reversed on appeal.  At the hearing, the trial court orally gave extensive reasons for denying the motion:

> The Court has heard the testimony of the witnesses, who were presented today, concerning the motion for new trial.  The Court heard from Ms. Ashley Jordan, who gave live testimony under oath, as to what she observed, and also the Court then allowed Mr. Regan to recall her in order that she may draw and mark on

a photograph indicating her position and the position of the individuals that she observed in a fight.  The Court's also viewed the video, which – although it was not listed in the motion for a new trial, the Court, in the interest of justice, thought it would be appropriate that the court view the video.  The stipulation at trial covered the fact that the Jefferson Parish Sheriff's Office did receive a white t-shirt as claimed by the defense.  That stipulation was made in the presence of the jury, and, therefore, the Court can only assume that the jury considered the information.  Mr. Regan had the opportunity to call witnesses who described the t-shirt and the blood on the t-shirt.  Mr. Regan also had the opportunity to argue all of those matters to the jury in closing argument.  The defense at trial of the matter called a number of witnesses under oath with regard to the defense position as to what occurred, what they observed, and those witnesses also included witnesses who testified about this white t-shirt.

According to the record in the matter, which the Court has reviewed for the purpose of today's hearing, the defense called eight witnesses in the case.  The jury had the opportunity to judge the credibility of both the State's witnesses, who were called, and the witnesses called by the defense.  The jury had an opportunity, in judging their credibility, to hear any discrepancies that might have existed in their testimony.  The jury had the opportunity to hear the matter concerning whether or not one of the witnesses had requested assistance from the State, all of this before the jury and for their consideration.

The Court looks at the entire record of the matter, all of the testimony of the witnesses who testified both at the trial and Ms. Jordan, who testified today.  The Court also considering that, in spite of Mr. Regan saying that he needs more time, it has been 77 days since the time of the verdict in this matter, that a defendant can always continually say, oh, there are more witnesses out there, give the Court more addresses, issue more subpoenas.  It could go on forever.  The Court believes that the defense has had sufficient time to bring forward any witness who they believe, under the provisions of the Code of Criminal Procedure, would qualify for a motion for a new trial.

Based upon the entire record of the matter, all of the evidence and the testimony – I want to make it clear that the State has not offered evidence in this hearing, but the defense has offered both Defense Exhibits 1 and 2, 1 being the Google photograph that was marked by Ms. Jordan, number 2 being the video, which was obtained from the Jefferson Parish Sheriff's Office – the motion for a new trial is denied.[62]

That ruling clearly was not an abuse of discretion.  The issue regarding the missing t-shirt

had been dealt with at trial.  The strongest evidence for a new trial was Jordan's testimony;

---

[62] State Rec., Vol. 7 of 8, transcript of January 11, 2013, pp. 67-70.

however, that testimony was not so compelling that there was a reasonable probability that it would produce an acquittal in the event of a retrial. On the contrary, Jordan simply testified that she witnessed the altercation between petitioner and Decou and that she saw Decou pull "something shiny" (presumably a knife) from his "back pocket."[63]  However, whether it was Decou or petitioner who pulled the knife was a central issue at trial, with defense witnesses testifying that it was Decou who pull the knife, while the state's witnesses testified that it was petitioner. Because Jordan's testimony was merely cumulative of the testimony of other defense witnesses at trial, it is insufficient to warrant a new trial. See, e.g., State v. East, 768 So. 2d 173, 178 (La. App. 5th Cir. 2000) ("Cumulative evidence as to an issue fairly disclosed and decided at the trial is usually not of the nature that would probably produce an acquittal.").

Lastly, as to fourth proposed claim concerning the loss of the petitioner's shirt by police, that claim, as already explained herein, has no merit. As noted previously, when an individual claims that his right to due process was violated by a failure of the police to preserve potentially useful evidence, he bears the burden of establishing that the police acted in *bad faith*. Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Petitioner had no proof of such bad faith, and, therefore, the proposed claim had no merit.

For all of these reasons, the undersigned finds that petitioner has failed to establish that either is trial counsel or his appellate counsel was ineffective. Accordingly, this claim should be denied.

---

[63] Id. at pp. 17 and 19.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Trent Lyons be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[64]

New Orleans, Louisiana, this eleventh day of May, 2018.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[64] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.